Martin D. Ott v. Commissioner.
Ott v. Commissioner
Docket No. 832.
United States Tax Court
1943 Tax Ct. Memo LEXIS 20; 2 T.C.M. (CCH) 1147; T.C.M. (RIA) 43522; December 24, 1943
*20 F. C. Harrison, Esq., 1106 Davenport Bank Bldg., Davenport, Ia., for the petitioner. Carroll Walker, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $104.24, $276.82 and $194.37 in the petitioner's income taxes for the years 1939, 1940 and 1941, respectively. The petitioner challenges the refusal of the respondent to allow a deduction of the following items: 1. A loss of $2,000 due to the worthlessness of Arizona Comstock Corporation stock (1939). 2. Losses of $4,602 and $1,000 due to the worthlessness of the petitioner's stock in the Eunamar Mining Company and the Denny Mining Company, respectively (1940). 3. The long term capital loss of an investment of $986.21 in Lead and Zinc Producers, Incorporated (1941). Findings of Fact Certain facts are stipulated and as so stipulated are adopted as findings of fact. In so far as they are material to the issues they are as follows: The petitioner is an individual residing in Bettendorf, Iowa. He filed his income tax returns for the years under consideration with the collector of internal revenue for the district of Iowa. On June 6, 1938 a petition was filed *21 on behalf of the Arizona Comstock Corporation, hereinafter called Arizona, in the district court of the United States for the district of Nevada, under section 77 B of the Bankruptcy Act (entitled An Act to Establish a Uniform System of Bankruptcy throughout the United States, approved July 1, 1898, and amendments thereto). The petition stated that a plan of reorganization was being negotiated by Arizona with its creditors and those willing to advance capital; that Arizona's property should be continued in operation to prevent damage and loss; that the company had every reason to believe that the continued operation of the plant would prove profitable, and that the ultimate development of its underground ores would prove very profitable. On the same day the court entered an order directing Arizona to continue the operation of its properties and ordering a meeting of stockholders and creditors to determine whether Arizona or a trustee should continue such operation. On November 26, 1938 James M. Leonard, trustee of Arizona, filed his report purporting to show that the reorganization plan could not be effected and recommending the approval of a contract of sale of Arizona's assets to *22 William N. Albee. On December 12, 1938 Arizona and its stockholders filed an answer resisting and objecting to the approval of the Albee contract and asserting that Arizona was not insolvent; that the trustee's report did not show the true value of its properties; that the reorganization plan was feasible and that capital could be secured to insure a profitable business. The court ordered that the hearing on the question of Arizona's solvency and on the trustee's report and objections thereto be continued to January 11, 1939, and that a reorganization plan might be presented at that time. On January 7, 1939 Arizona filed its objection to a plan of reorganization filed by its creditors and denied its insolvency. It asserted that the plan provided for the liquidation and not the reorganization of the corporation and that under the proposed plan the stockholders would be eliminated. On January 13, 1939 the court approved the execution of a modified contract with Albee and determined that Arizona was at that time insolvent. The original contract with Albee fixed the purchase price of Arizona's holdings at $620,000, approximately the amount of its debts. The modified contract called *23 for $720,000. The plan provided for a continuing recognition of the stockholders' equity and specifically stated that under the Albee contracts the stockholders might recover whatever sum was not required to redeem and retire the preferred and class A common stock. Albee failed to carry out his contract. On December 12, 1940 the trustee filed a supplemental report alleging that Arizona was insolvent and also presented an additional plan of reorganization, including the approval of a contract between him and A. D. Vencill entered into on December 16, 1940. Arizona, on behalf of its stockholders, resisted the proposed additional plan on various grounds and insisted that it was still solvent. On January 31, 1941 the court entered a memorandum decision in which it reviewed the situation and observed that the conclusion was justified "that a serious question may be presented as to whether the debtor may be said to be bankrupt at this time." On March 8, 1941 the court entered a further memorandum decision and order in which it discussed at length the bankruptcy of Arizona and approved a modification of the contract, which, when completed, would apparently result in an estimated payment *24 of $155,000 to stockholders. The modified plan was filed with the court on March 28, 1941. In 1933 the petitioner purchased 16,000 shares of common stock of Arizona at a cost of 25 cents per share, or $4,000. On March 13, 1939 the petitioner entered into a contract with Lacy E. Gager, granting to the petitioner a 10-day option to purchase 2,000 shares of stock (its entire capital) of Eunamar Mining Company, hereinafter called Eunamar, for $25,000, of which $5,000 was paid in cash and the remainder in installments as progressively needed in the development operations described in the contract. Pursuant to the terms of the contract the petitioner agreed to develop the mining lease and finance the operations. The stock was placed in escrow pending full performance under the contract and payment therefor. On April 26, 1940 Gager notified the petitioner, that, because of the petitioner's failure to comply with the various provisions of the contract of March 13, 1939, such contract was forfeited. During the period from March 13, 1939 to April 26, 1940 the petitioner invested $6,650 in the stock of Eunamar. During the year 1940 the petitioner had no short-term capital gain. The record *25 discloses the following additional facts: After January 1, 1940 the petitioner and his associates became convinced that the venture in Eunamar was a losing one and refused to invest more money in the enterprise. Such refusal resulted in the forfeiture notice. In February 1939 the Denny Mining Company, hereinafter called Denny, and C. F. Denny entered into a contract with Marx M. Harder, trustee for a group of individuals including the petitioner, providing for the development of lead and zinc properties in the Tri-State Mining District, comprising certain counties in Missouri and Kansas. The contract recited that Denny owned a completely equipped mill and certain leases of lands in Missouri and Kansas and needed additional capital for operating purposes. Harder agreed to raise $30,000 to be exchanged for notes and one-half of the stock of Denny. The petitioner's associates received as collateral security a mortgage for $10,000 on the mill and equipment. The petitioner invested $1,600 in the venture. About November 1940 he determined that the investment would not result in a profit. He and his associates employed an Iowa attorney to collect on the chattel mortgage. The attorney *26 in turn employed an attorney in Joplin, Missouri. The Joplin attorney refused to proceed with the case without a payment of $100 on account. His request for such payment was made because much of the mortgaged property had disappeared and he felt that there would be nothing to liquidate. The petitioner was informed of the situation in November 1940. In January 1937 the petitioner purchased for an undisclosed price 12 shares of the common stock of Lead and Zinc Producers, Incorporated, of which Victor A. Silliman was president and W. D. Phelan was vice-president. He also purchased for $100 in cash one share of preferred stock in the same company. He paid $500 for a bond of the same company dated October 1936 and secured by a mortgage on the mill. He advanced to Silliman and Phelan at various times during 1937 and 1938 the aggregate sum of $2,122.44 for the purpose of investment in the stock of the company. The bond issue secured by the Lead and Zinc Producers, Incorporated properties was foreclosed in 1941. The respondent disallowed the Arizona loss on the ground that its stock was worthless prior to the taxable year 1939. He held that the Eunamar loss was a short-term capital loss *27 in 1940 and hence not allowable since it was offset by no short-term capital gain. He determined that the investment in Denny was worthless prior to the taxable year 1940. He disallowed the Lead and Zinc Producers, Incorporated loss for 1941 because the cost or other basis of the investment had not been established. Opinion VAN FOSSAN, Judge: All of the issues before us are questions of fact. The issue relating to the alleged worthlessness of the Arizona stock must be decided against the petitioner for failure to sustain his burden of proving that the worthlessness occurred in the taxable year. On the contrary, the evidence submitted by him in the form of the record in the bankruptcy proceeding shows that the Arizona stockholders persistently contended that the company was not insolvent during 1939 and that it continued to be solvent as late as March 8, 1941. The most recent modified plan of reorganization, filed on March 28, 1941, indicated a possible ultimate recovery of $155,000 for the stockholders. In the face of these facts of record we must approve the action of the respondent regardless of the reason assigned in his notice of deficiency. The fact was stipulated that the *28 petitioner invested $6,650 in the stock of Eunamar between March 13, 1939 and April 26, 1940. The record establishes that on the latter date his contract with Gager was forfeited and all prospects of completing operations thereunder terminated. His investment in Eunamar stock was, therefore, wiped out and the stock would never be delivered to him. There was no sale or exchange of the stock. The amount of $6,650 lost by the petitioner by reason of his investment in Eunamar stock is allowed as an ordinary loss. The petitioner invested $1,600 in the scheme to underwrite the development of the Denny leases. He and his associates were to raise $30,000 for that purpose and to receive notes and stock therefor. They were given a collateral mortgage for $10,000 to secure their advances. In November 1940 they determined that the venture was hopeless and sought to recoup their loss by enforcing the chattel mortgage. However, a large part of the mortgaged equipment owned by Denny had vanished and an enforcement proceeding would have been useless. The debt became worthless when this fact developed in November 1940. The deduction is allowed. In 1936 and 1937 the petitioner invested $600 in the *29 preferred stock and a bond of Lead and Zinc Producers, Incorporated. He purchased 12 shares of its common stock. The record does not reveal the amount paid. He also advanced $2,122.40 during 1937 and 1938, to be repaid by the issuance of stock. In 1941 the mortgage securing the company's bonds was foreclosed. The record is lacking as to what, if any, return the petitioner obtained on his $500 bond. Apparently he has assumed that the company had no other resources from which the stockholders might recover on their preferred or common stock investment. The facts were not developed at the hearing. The petitioner has failed to establish the worthlessness of his "investment" or stock interest in the Lead and Zinc Producers, Incorporated, company in 1941 and hence the deduction is disallowed. Decision will be entered under Rule 50.